**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ERIN E. STERN,**

                                                     **Plaintiff,**

      **vs.**                                                                    **5:18-CV-71**
                                                                                  **(MAD/TWD)**

**DAVID J. SHULKIN,** _M.D.,_
_Secretary of Veterans Affairs_,

                                                     **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**KALBIAN HAGERTY, LLP**                **ERIC LEE SIEGEL, ESQ.**
888 17th Street, N.W.                        **EVAN MICHAEL LISULL, ESQ.**
Ste 1000
Washington, DC 20006
Attorneys for Plaintiff

**OFFICE OF THE UNITED STATES**        **RANSOM P. REYNOLDS, III, ESQ.**
**ATTORNEY - SYRACUSE**
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this action on January 17, 2018, alleging violations of the

Rehabilitation Act and Title VII of the Civil Rights Act of 1964. _See_ Dkt. No. 1. Plaintiff later

obtained counsel and filed a second amended complaint. _See_ Dkt. No. 21. In her second amended

complaint, Plaintiff alleges that Defendant subjected her to discrimination on the basis of her sex

and disability and retaliated against her for engaging in protected activities, in violation of Title

VII and the Rehabilitation Act.  *See id*. at 1.  Plaintiff has filed a motion for a preliminary

injunction.  *See* Dkt. No. 41.  Specifically, Plaintiff seeks to prevent the execution of a Proposed

Removal Action issued by the Bureau of Veteran's Affairs (the "VA") and to prohibit certain

former and current supervisors from entering Plaintiff's home at any time during the pendency of

this action.[1]  *See* Dkt. No. 41-1 at 1.  Oral argument on the motion was held on Tuesday,

December 10, 2019.  For the following reasons, Plaintiff's motion is denied.

## II. BACKGROUND

Plaintiff has been an employee of the VA since 2012.  *See* Dkt. No. 41-1 at 8.  The

complaint alleges repeated discrimination based upon Plaintiff's gender and disability, and

retaliation for engaging in protected activities.  *See* Dkt. No. 21.  In September 2017, Plaintiff

filed a formal EEOC discrimination complaint with the VA's Office of Resolution Management

(the "ORM") alleging a hostile work environment.[2]  *See* Dkt. No. 21 at ¶¶ 60, 66.  On October 17,

2017, the agency dismissed Plaintiff's complaint, finding that Plaintiff's complaint failed to state a

claim.  *See id*. at ¶¶ 67-68.  In January 2018, Plaintiff filed a second EEOC complaint with the

VA's ORM.  *See id*. at ¶ 151.  In that complaint, Plaintiff alleged a hostile work environment,

discrimination on the basis of gender and disability, and retaliation for engaging in a protected

activity.  *See id*. at ¶ 153.  On January 22, 2019, the VA proposed to remove Plaintiff from federal

service.  *See id*. at ¶ 177.  Plaintiff believed the VA's action was discriminatory.  On January 31,

2019, the ORM completed its investigation and notified Plaintiff of her right to a hearing before

---

[1] Plaintiff seeks to prevent the following individuals from having in-person contact with her at her residence while she teleworks: Donna Mallia, Nick Pamperin, Antionette Zingdale, Rebecca Celucci, Kevin Esslinger, and Kristen Swanson.  *See* Dkt. No. 41-1 at 7.

[2] Plaintiff also alleged violations of the Whistleblower Protection Act, but those claims and related retaliation allegations are not part of this action.  *See* Dkt. No. 21 at ¶ 60.

the EEOC.  *See id*. at ¶ 182.  Plaintiff requested a hearing, but now seeks to pursue the same

claims in this action.  *See id*. at ¶ 183.

Plaintiff also has a pending appeal with the Merit System Protection Board ("MSPB").

*See* Dkt. No. 41-1 at 8.  Plaintiff claims that the appeal is related to her whistleblower allegations,

but indicates that other actions are being reviewed by the MSPB.  *See id*.; Dkt. No. 41-2 at ¶ 5.

Additionally, as part of a prior MSPB appeal from a 2018 dismissal of her actions for failure to

exhaust administrative remedies, Plaintiff agreed to mediate a universal resolution of her MSPB

and EEO claims.  *See id*. at 9.  However, it appears that a settlement was not reached due to the

proposed removal action to terminate her employment.  *See id*.  Currently, Plaintiff's appeal is

pending before the MSPB and there is a stay on the proposed removal action in place from the

VA's Office of Accountability and Whistleblower Protection (the "OAWP").  *See id*. at 10.

### III. DISCUSSION

**A.    Jurisdiction**

In response to Plaintiff's motion for a preliminary injunction, the Government argues that

the Court does not have subject matter jurisdiction in this case.  *See* Dkt. No. 47 at 4.  The

Government suggests that the Civil Service Reform Act (the "CSRA") implicitly precludes federal

district court jurisdiction over Plaintiff's claims.  *See* Dkt. No. 47 at 5 (citing *Tilton v. SEC*, 824

F.3d 276 (2d Cir. 2016)).  Plaintiff argues that the Court has subject matter jurisdiction over her

Title VII and Rehabilitation Act claims.  *See* Dkt. No. 49 at 2.

The CSRA "established a comprehensive system for reviewing personnel action taken

against federal employees."  *United States v. Fausto*, 484 U.S. 439, 455 (1988).  The Supreme

Court has found that the CSRA precludes extrastatutory review to those employees who are

granted administrative and judicial review under the CSRA.  *See Elgin v. Dep't of the Treasury*,

567 U.S. 1, 5 (2012).  However, "[i]f [an] employee asserts no civil-service rights, invoking only federal anti-discrimination law, the proper forum for judicial review. . . is a federal district court." *Perry v. MSPB*, 137 S. Ct. 1975, 1979 (2017).  However, "when an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a 'mixed case.'" *Id*. at 1980 (quotation omitted) (emphasis in original.  "[I]n mixed cases . . . in which the employee . . . complains of serious adverse action prompted, in whole or in part, by the employing agency's violation of federal antidiscrimination laws, the district court is the proper forum for judicial review." *Id*. at 1988.

Plaintiff argues that she is not challenging any personnel actions and that this case invokes only federal anti-discrimination law, thereby vesting this Court with jurisdiction. *See* Dkt. No. 49 at 1-2.  However, even if the Government is correct that the CSRA interferes with traditional notions of jurisdiction, this case would be a "mixed case." *See Perry*, 137 S. Ct. at 1980. Therefore, jurisdiction may eventually lie with the Court for review.  *See Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985) (holding "if the court eventually will have jurisdiction of the substantive claim and an administrative tribunal has preliminary jurisdiction, the court has incidental jurisdiction to grant temporary relief to preserve the status quo pending the repining of the claim for judicial action on the merits").  Accordingly, the Court will consider the merits of Plaintiff's motion for a preliminary injunction.

**B.    Motion for a Preliminary Injunction**

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted).  "A decision to grant or

deny a preliminary injunction is committed to the discretion of the district court." *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994) (citation omitted).

A party seeking a preliminary injunction must establish "'a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party.'" *Allied Office Supplies, Inc. v. Lewandowski*, 261 F. Supp. 2d 107, 108 (D. Conn. 2003) (quoting *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003)).

The Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Consonant with this view, the Second Circuit has held that a district court may consider hearsay evidence when deciding whether to grant preliminary injunctive relief. *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010). Therefore, the strict standards for affidavits under the Federal Rules of Evidence and in support of summary judgment under Rule 56(c)(4) of the Federal Rules of Civil Procedure requiring that an affidavit be made on personal knowledge are not expressly applicable to affidavits in support of preliminary injunctions. *See Mullins v. City of New York*, 634 F. Supp. 2d 373, 384 (S.D.N.Y. 2009) (citations omitted). Nevertheless, courts have wide discretion to assess the affidavit's credibility and generally consider affidavits made on information and belief to be insufficient for a preliminary injunction. *See* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2949 (2d ed. 1995); *Mullins*, 634 F. Supp. 2d at 373, 385, 390 n.115 (declining to fully credit the "defendants' hearsay affidavit" and noting that while the court "may consider hearsay evidence in a preliminary injunction hearing . . . , a court

may weigh evidence based on whether such evidence would be admissible under the Federal Rules of Evidence").

Even if the plaintiff demonstrates irreparable harm and a likelihood of success on the merits the remedy of preliminary injunctive relief may still be withheld if equity so requires.  "An award of an injunction is not something a plaintiff is entitled to as a matter of right, but rather it is an equitable remedy issued by a trial court, within the broad bounds of its discretion, after it weighs the potential benefits and harm to be incurred by the parties from the granting or denying of such relief."  *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999) (citation omitted).

### 1. Administrative Action

In *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974), the Supreme Court explained that court interference in unresolved administrative procedures has an "obviously disruptive effect" and that "the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs."

In addition to her current action in this court, Plaintiff also has matters pending before the VA's OAWP and the MSPB.  *See* Dkt. No. 41-1 at 8-9.  At oral argument, Plaintiff indicated that the appeal pending before the MSPB included a review of the proposed removal order at issue in this motion.  *See* Transcript of Oral Argument ("Tr.") at 11.  As part of that appeal, it appears that Plaintiff has sought a stay of the removal order from the MSPB on multiple occasions.  *See* Dkt. No. 47 at 3.  Plaintiff states that these requests were denied because there is already a stay of the proposed removal order in place from another agency addressing complaints by Plaintiff.  *See* Dkt. No. 41-1 at 10.  Given that a stay is already in place, the Court is particularly disinclined to interfere with an ongoing government personnel action.

### 2. *Irreparable Harm*

"Irreparable harm is the single most important prerequisite for the issuance of a

preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir.

1999) (internal quotations omitted).  "[I]n *Sampson*, . . . the Supreme Court articulated a

particularly stringent standard for irreparable injury in government personnel cases."  *Stewart*, 762

F.2d at 199.  "The *Sampson* Court held that, except in a 'genuinely extraordinary situation,'

irreparable harm is not shown in employee discharge cases simply by a showing of financial

distress or difficulties in obtaining other employment 'however severely they may affect a

particular individual.'"  *Id*. (quotation and other citations omitted).  The Second Circuit has held

that this heightened requirement applies in Title VII actions as well.  *See id*.  One court

considering a motion for a preliminary injunction in an employment discharge case described

factors which have been deemed to constitute "extraordinary circumstances."  *Williams v. State*

*University of New York*, 635 F. Supp. 1243, 1248 (E.D.N.Y. 1986).  The court, in *Williams*,

explained:

> Culling the factors from cases on point which have been deemed to
> constitute "extraordinary circumstances," this Court concludes that a
> discharged plaintiff must show that she (1) has very little chance of
> securing further employment; (2) has no personal or family
> resources at her disposal; (3) lacks private unemployment insurance;
> (4) is unable to obtain a privately financed loan; (5) is ineligible for
> any type of public support or relief[;] and (6) any other compelling
> circumstances which weigh heavily in favor of granting interim
> equitable relief.

*Id*.

"Where money damages are adequate compensation, a preliminary injunction will not

issue." *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 918 (2d Cir. 1986).  "Nor will

damage to reputation and self esteem, or hardship imposed on a plaintiff's family . . . merit a

preliminary injunction." *Williams*, 635 F. Supp. at 1247-48 (citing *Stewart*, 762 F.2d at 200).

"'[T]he injuries that generally attend a discharge from employment – loss of reputation, loss of income and difficulty in finding other employment – do not constitute the irreparable harm necessary to obtain a preliminary injunction.'" *Oliver v. New York State Police*, No. 1:15-CV-444, 2019 WL 2009182, *7 (N.D.N.Y. May 6, 2019) (citing *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992)).

    Plaintiff argues that she would suffer irreparable harm under extraordinary circumstances. *See* Dkt. No. 41-1 at 12.  Specifically, Plaintiff claims that she would be unable to make enough money to pay for costs associated with raising two young children, pay for her mortgage and two car payments, or afford to heat her home in the winter.  *See id*. at 12-13.  While the Court recognizes that these are hardships, the Second Circuit has held that financial distress associated with losing employment does not constitute irreparable harm absent "extraordinary circumstances." *Holt v. Continental Group*, 708 F.2d 87, 91 (2d Cir. 1983) (holding that "irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown"); *Stewart*, 762 F.2d at 199 (finding a plaintiff's damage to his reputation and self-esteem and that he would be unable to adequately provide for his family insufficient to constitute irreparable harm); *Oliver*, 2019 WL 2009182, at *7-8 (finding that financial distress and stigma associated with loss of employment, losses associated with defamation, and difficulty obtaining other employment did not constitute irreparable harm); *Bagley v. Yale University*, No. 3:13-CV-1890, 2014 WL 7370021, *7 (D. Conn. Dec. 29, 2014) (finding loss of reputation, stress and anxiety associated with relocation, and chilling effect on co-workers insufficient did not rise to the level of irreparable harm).  Further, the injuries which Plaintiff claims would result from denial of her

motion are compensable by money damages should she be successful on her claims. Plaintiff has failed to establish that she will suffer irreparable harm under the traditional standard, and has certainly failed to establish "a genuinely extraordinary situation" as is required in cases brought by federal employees. *See Sampson*, 415 U.S. at 91-92.

Further, "[t]he irreparable injury prerequisite for a preliminary injunction requires proof of harm that is 'actual and imminent' and not remote or speculative.'" *Pisarri v. Town Sports Int'l, LLC*, 758 Fed. Appx. 188, 190 (2d Cir. 2019). Here, Plaintiff seeks an injunction preventing the VA from carrying out its proposed removal action in the event that the existing stay from the OAWP is lifted. *See* Dkt. No. 41-1 at 11-12. At oral argument, Plaintiff argued that irreparable harm is actual and imminent because the VA has commenced the process of terminating her employment by filing the proposed removal order. Tr. at 12-13. However, when that order will be executed, *if at all*, is unknown. Plaintiff's counsel indicated that the matter pending before the MSPB includes a review of the proposed removal action. *See id*. at 11. The MSPB could decide to vacate the proposed removal order or issue a stay of its execution, as Plaintiff has requested on multiple occasions. *See* Dkt. No. 47 at 3. This uncertainty is exactly the type which makes Plaintiff's claimed injury speculative. *See Peck v. Montefiore Med. Ctr.*, 987 F. Supp. 2d 405, 410-11 (S.D.N.Y. 2013) (finding request to terminate employee was not actual or imminent when there were review procedures in place through which the employee could challenge her termination and such review was incomplete). Further, as previously discussed, the Court is hesitant to intervene into unresolved administrative matters which address this exact issue. *See Sampson*, 415 U.S. at 83-84.

Finally, "preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of

those rights, however, tends to indicate at least a reduced need for such drastic, speedy action."

*Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).  Here, there was an nine-month delay

between the issuance of the proposed removal action and the filing of Plaintiff's motion, thereby

cutting against Plaintiff's argument that emergency relief is necessary.[3]  *See Citibank, N.A.*, 756

F.2d at 276; *see also Hornig v. Trustees of Columbia Univ.*, No. 17-CV-3602, 2018 WL 5800801,

*7 (S.D.N.Y. Nov. 5, 2018) (finding that the plaintiff's two-and-a-half-month delay in bringing a

motion for preliminary injunction in employment discrimination case undermined "a finding [o]f

irreparability because courts typically decline to grant preliminary injunctions in the face of

unexplained delays of more than two months") (quotation omitted).  At oral argument, Plaintiff

was unable to provide the Court with any reason which would justify the delay and stated only

that it was the "result of failed negotiations."  Tr. at 18.  This unjustified delay weighs against the

necessity of injunctive relief.

In the alternative, Plaintiff argues that there will be a chilling effect which would dissuade

others from speaking out about wrongdoing at the VA should the Court deny her motion, thereby

constituting irreparable harm.  *See* Dkt. No. 41-1 at 13-14.  "A retaliatory discharge carries with it

the distinct risk that other employees may be deterred from protecting their rights . . . or providing

testimony for the plaintiff in her effort to protect her rights.  [Such] risks may be found to

constitute irreparable injury."  *Holt*, 708 F.2d at 91.  However, there is not "irreparable injury

sufficient to warrant a preliminary injunction in every retaliation case."  *Id*.  "This theory, to be

worthy of consideration as a basis for a preliminary injunction, must be backed up by evidence

sufficient to allow the district court to make 'an explicit determination as to whether in the

---

[3] The proposed removal action was issued on January 22, 2019 and the motion was filed on September 30, 2019.  *See* Dkt. No. 41-1 at 9, 16.

particular circumstances therein, the risk of irreparable harm existed as the result of a potential

chilling effect.'" *Bagley*, 2014 WL 7370021, at \*11 (citing *Stewart*, 762 F.2d at 200).

Here, Plaintiff's arguments are supported only by her affirmation that she has been told

that other individuals will not come forward with complaints of harassment or retaliation for fear

of reprisal.  *See* Dkt. No. 41-1 at 13-14.  Such unsupported claims are insufficient for the Court to

determine that any chilling effect is anything but speculative.  *See Moore*, 409 F.3d at 512

(finding an alleged chilling effect insufficient where there were no allegations of witness

intimidation and little evidence supporting allegations of fear of retaliation); *Victorio v. Sammy's

Fishbox Reality Co., LLC.*, No. 14-CV-8678, 2014 WL 7180220, \* 5-6 (S.D.N.Y. Dec. 12, 2014)

(finding allegations that the defendants attempted to persuade employees not to assist with a law

suit insufficient to establish irreparable injury absent evidentiary support of such claims).  Thus,

the Court finds that Plaintiff has failed to establish irreparable harm as a result of a potential

chilling effect.

Finally, Plaintiff seeks an injunction preventing certain supervisors from entering her

home.  Plaintiff explains that one of the named individuals came to her house to conduct a

"telework inspection."  *See* Dkt. No. 41-2 at ¶ 36.  Plaintiff claims that an injunction preventing

the named individuals from going to her home would prevent "potential triggers of panic attacks."

*See id*. at ¶ 41.  While such injuries can constitute irreparable harm, Plaintiff's conclusory

allegations of injury do not suffice.  *See Miller v. Miller*, No. 3:18-CV-1067, 2018 WL 3574867,

\*3 (D. Conn. July 25, 2018); *Lore v. City of Syracuse*, No. 00-CV-1833, 2001 WL 263051, \*5

(N.D.N.Y. Mar. 9, 2001) (finding the plaintiff's claims of "fear, anxiety, humiliation, indignity and

shame" insufficient to establish irreparable harm).

Based on the reasons described above, the Court finds that Plaintiff has failed to establish, by a clear showing, irreparable harm absent injunctive relief.  Accordingly, Plaintiff's motion is denied.

## IV. CONCLUSION

After careful review of the record, the parties' arguments, and the applicable law, the Court hereby

**ORDERS** that Plaintiffs' motion to for a preliminary injunction (Dkt. No. 41) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  December 18, 2019
       Albany, New York

Mae A. D'Agostino
U.S. District Judge