UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERIN E. STERN,

                         **Plaintiff,**

  vs.                                                              5:18-CV-71
                                                                           (MAD/TWD)

DENIS McDONOUGH, *Secretary of Veterans Affairs,*

                         **Defendant.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**KALBIAN HAGERTY LLP**                **ERIC LEE SIEGEL, ESQ.**
888 17th Street, NW, Suite 1000
Washington, District of Columbia 20006
Attorneys for Plaintiff

**OFFICE OF THE UNITED STATES**      **RANSOM P. REYNOLDS, III, AUSA**
**ATTORNEY – SYRACUSE**
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On January 17, 2018, Plaintiff, Erin Stern, initiated this suit against the Secretary of Veterans Affairs.[1] *See* Dkt. No. 1. In Plaintiff's second amended complaint, filed on April 9, 2018, she alleges (1) sex and gender hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e. *et seq.*; (2) retaliation for engaging in protected

---

[1] Denis McDonough has succeeded David Shulkin as Secretary of Veterans Affairs. Pursuant to Fed. R. Civ. P. 25(d), where an officer "ceases to hold office while the action is pending," the successor is automatically substituted as a party.

1

activities under Title VII; (3) failure to accommodate a disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*; and (4) retaliation for engaging in protected activities under the Rehabilitation Act. *See* Dkt. No. 21. On December 18, 2019, this Court denied Plaintiff's motion for a preliminary injunction, which sought to prevent the execution of a Proposed Removal Action, issued by the Bureau of Veteran's Affairs ("VA"), and to prohibit former and current supervisors from entering Plaintiff's home at any time during the pendency of this action. *See* Dkt. No. 58.

Currently before the Court are the parties' cross motions for partial summary judgment.[2] Plaintiff seeks summary judgment as to liability on her failure to accommodate a disability claim and her hostile work environment claim. *See* Dkt. No. 91. Defendant seeks partial summary judgment on the same claims. *See* Dkt. No. 93.

## II. BACKGROUND

---

[2] Plaintiff contends that Local Rule 7.1(b)(3) "requires" that her motion be deemed unopposed and that Defendant's cross-motion be denied because Defendant filed its response and cross-motion one-day late. It is well settled that the Court "has discretion to excuse failure to comply with the local rules." *Banks v. Annucci*, No. 9:14-CV-340, 2017 WL 4357464, *3 (N.D.N.Y. Sept. 29, 2017); *see Hardnett-Majette v. Nat'l R.R. Passenger Corp.*, No. 1:16-CV-389, 2017 WL 2838159, *2 (N.D.N.Y. June 30, 2017) ("[T]he Court has discretion to excuse a failure to comply with the local rules"). Fed R. Civ P. 16(b)(4) also permits the Court to entertain an untimely cross-motion if there is good cause and no prejudice. *See Smith v. Mikki More, LLC*, 59 F. Supp. 3d 595, 608 (S.D.N.Y. 2014). "In further evaluating 'good cause' and in the interests of justice, the Court also considers judicial efficiency in ruling on cross summary judgment motions together, thereby possibly alleviating the need for trial. *United States v. Cohan*, No. 3:11-CV-412, 2012 WL 4758142, *5 (D. Conn. Oct. 5, 2012).

Defendant attempted to file its cross-motion and response on the day of the deadline, January 10, 2022. *See* Dkt. No. 92. Defendant incorrectly filed its papers. But within hours, at 1:59 a.m. on January 11, Defendant correctly filed. *See* Dkt. No. 93. Although the reason for the error is not clear, the Court notes that Defendant attempted to file its cross motion and opposition on time. Plaintiff does not claim she suffered any prejudice from Defendant's two-hour late filing, nor could she; the Court had extended the time for Plaintiff's response by a full day. *See* January 11, 2022 Text Notice. Accordingly, the Court will fully consider Defendant's cross motion and response.

2

Plaintiff is a Military Services Coordinator ("MSC") employed by the Veteran Affairs Veterans Benefits Administration. From 2012 through 2018, Plaintiff worked in the Integrated Disability Evaluation System ("IDES") building. Dkt. No. 93-1 at ¶ 9. In January 2018, Plaintiff was moved to an office in Clark Hall. *Id.* at ¶ 11. Plaintiff has a documented service-connected disability that has been acknowledged by her employer.[3] *See* Dkt. No. 91-24. Plaintiff alleges that her reasonable accommodations were not transferred from the IDES building to Clark Hall. *See* Dkt. No. 93-1 at ¶¶ 14-16.

On November 29, 2016, Plaintiff requested a reasonable accommodation for an "enlarged computer monitor/screen." Dkt. No. 93-6. On December 22, 2016, Plaintiff's medical provider faxed a letter recommending that Plaintiff receive twenty-two-inch computer monitors. Dkt. No. 93-7 at 2. Plaintiff received a twenty-two-inch computer monitor in February 2017 and a second one in July 2017. Dkt. No. 94-1 at ¶¶ 162-63. The enlarged computer monitors moved with Plaintiff when she was transferred to Clark Hall. *Id.* at ¶ 164.

Plaintiff's ergonomic office set up, however, was not transferred to Clark Hall. *Id.* at ¶ 165. The parties dispute whether Plaintiff had requested the ergonomic set up and whether it was a reasonable accommodation. In 2015, a review of Plaintiff's workstation was conducted by the Department of the Army. *See* Dkt. No. 93-4. The review concluded that the following changes be made to Plaintiff's workspace:

> 1. Sitting halfway in the chair will cause back strain after hours at work. Industrial Hygiene recommends sit back in chair to reduce future back issues;
>
> 2. Employee's desk needs to be rotated. Employee is more efficient and comfortable working on a right-handed desk. Rotating desk

---

[3] In her motion, Plaintiff states that she "refrains from submitting for the public record her specific disabilities subject to service-connected disability ratings," unless Defendant challenges whether she is disabled. Dkt. No. 91-1 at 9 n.2.

3

>will improve employee's workflow and improve ergonomics. Refer to attached diagram; and
>
>3. Industrial Hygiene personnel conducted an illumination survey on employee's office: 73 FC (Foot Candles) to 85 FC. Industrial Hygiene recommends employee submit a work order to adjust illumination levels in office.

*Id.* at 4.

It is undisputed that Plaintiff did not submit a formal request for a reasonable accommodation, as she had for enlarged computer monitors. Dkt. No. 94-1 at ¶ 158. Defendant argues that the ergonomic study was a "routine review" and that the modifications made to Plaintiff's office were considered "comfort items," not an accommodation for a disability. *Id.* at ¶¶ 154, 157. Plaintiff argues that the review was done at her request and the modifications were reasonable accommodations. *Id.* Plaintiff also states that she requested the ergonomic work set up after she was transferred to Clark Hall. *Id.* at ¶ 16.

Separately, Plaintiff alleges a hostile work environment based on gender and sex discrimination. Plaintiff alleges that she "regularly witnessed MSCs telling jokes, swearing, crosstalk across the hallway, whatever stupidity happened to come into their heads at the moment." *Id.* at ¶ 33. A common joke in the office involved male MSCs joking about having sex with sheep. *Id.* at ¶ 36. Plaintiff also alleges that Army cadences were chanted in the workplace, some of which were offensive. *Id.* at ¶ 39. Additionally, Plaintiff alleges that bathrooms were unsanitary. *See id.* at ¶ 62.

On July 19, 2017, Plaintiff filed an informal EEO complaint. *See* Dkt. No. 93-8. The informal EEO complaint alleges that "that the restroom facilities were not sanitary," "there were no separate male / female restroom facilities in the building" and that she was being harassed on the basis of her sex. *See id.* at 2. An EEO counselor was assigned to investigate Plaintiff's

4

complaint. *See* Dkt. No. 93-9.  On September 8, 2017, the informal complaint was dismissed. *See* Dkt. No. 93-13.  The EEO counselor decided that the case "did not pass the severe or pervasive requirement." Dkt. No. 93-22 at 31.

On September 13, 2017, Plaintiff filed a formal EEO complaint. *See* Dkt. No. 93-14.  The formal complaint alleges similar claims to hose raised in the previously filed informal EEO complaint. *See id.*  On October 17, 2017, a final agency decision dismissed Plaintiff's complaint. *See* Dkt. No. 93-15.  The decision found that Plaintiff's "claim of harassment does not pass the severe or pervasive requirement for further processing." *Id.* at 3.

On December 20, 2017, Defendant filed an Occupational Safety and Health Administration ("OSHA") complaint. *See* Dkt. No. 93-18.  In response, OSHA initiated a fact finding investigation into Plaintiff's allegations of an unsafe and hostile work environment. *See* Dkt. No. 93-19.  Ultimately, OSHA concluded that Plaintiff did not prove a claim of unsafe or dangerous work environment, sexual harassment, or sex-based discrimination.  Dkt. No. 93-22 at 28-34.

### III. DISCUSSION

**A.     Legal Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir. 1997) (citation omitted). Moreover, the "mere existence of a scintilla of evidence in support of the [non-movant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252. "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' … and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B.     Failure to Accommodate**

6

"The Rehabilitation Act provides that '[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Quadir v. N.Y.S. Dep't of Labor*, 39 F. Supp. 3d 528, 538 (S.D.N.Y. 2014) (quoting 29 U.S.C. § 794).[4]  "Rehabilitation Act claims are governed under the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Frantti v. New York*, 850 Fed. Appx. 17, 19 (2d Cir. 2021).  Thus, Plaintiff bears the initial "'burden of proving by the preponderance of the evidence a prima facie case of discrimination.'"  *Id.* (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981)).  To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability, a plaintiff must demonstrate that

> "(1) [the plaintiff] is a person with a disability under the meaning of [the statute in question]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

*Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).

Here, Defendant only challenges the fourth element, arguing that Plaintiff's request for her ergonomic desk was not a request for a reasonable accommodation, and, as such, did not refuse to make an accommodation.  Defendant contends that the industrial hygiene study was performed on a voluntary basis, the changes provided to Plaintiff's workspace were "comfort items," and that Plaintiff never submitted a reasonable accommodation request.  *See* Dkt. No. 94-1 at ¶¶ 156-57.

---

[4] "Because the ADA and the Rehabilitation Act are very similar, [the Court] may 'look to caselaw interpreting one statute to assist ... in interpreting the other.'" *Hodges v. Holder*, 547 Fed. Appx. 6, 7 (2d Cir. 2013) (quoting *Francis v. City of Meriden*, 129 F.3d 281, 284 n.4 (2d Cir. 1997)).

7

In support, Defendant points to the industrial hygine survey's reference to its "routine review" of the workplace. *See* Dkt. No. 93-4 at 2. Defendant also notes that Plaintiff did not submit a formal request for an ergonomic workstation as a reasonable accommodation for a qualified disability. Dkt. No. 94-1 at ¶ 158.

As the Second Circuit has stated, whether Plaintiff made a request "would matter because, generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184–85 (2d Cir. 2006) (internal quotations omitted) (citing *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999) ("An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation)). Accordingly, "'[a] defendant is not liable for failure to provide a reasonable accommodation … if the plaintiff does not ask for an accommodation, or fails to provide information necessary to assess the request for an accommodation.'" *Khalil v. Pratt Institute*, No. 16-cv-6731, 2019 WL 1052195, *7 (E.D.N.Y. Feb. 13, 2019) (quoting *Grabin v. Marymount Manhattan Coll.*, No. 12 Civ. 3591, 2014 WL 2592416, *14 (S.D.N.Y. June 10, 2014)); *see also Vitti v. Macy's Inc.*, 758 Fed. Appx. 153, 157–58 (2d Cir. 2018) ("In addition, Vitti fails to establish denial of a reasonable accommodation because she never requested one").

As Plaintiff correctly notes, however, there is no requirement that a reasonable accommodation be made in a specific, formal manner. "The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 98 (2d Cir. 2015) (quoting *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)). "To trigger the duty to engage in the interactive accommodations process, the employer must have

8

known, or have had sufficient notice such that the employer reasonably should have known, that the employee has a disability within the meaning of the Act, as opposed to a mere impairment." *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020). Courts have regularly held that "[w]hat matters under the ADA are not formalisms about the manner of the request, but whether the employee ... provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Malzberg v. New York Univ.*, No. 19-CV-10048, 2022 WL 889240, *14 (S.D.N.Y. Mar. 25, 2022) (collecting cases). Once an employee has informed his employer of the need for accommodation, both parties are obliged to work together to fashion a reasonable accommodation. *Schroeder v. Suffolk Cnty. Cmty. Coll.*, No. 07-CV-2060, 2009 WL 1748869, *14 (E.D.N.Y. June 22, 2009). An employee's request must be "'sufficiently direct and specific to give the employer notice of the needed accommodation.'" *Dooley v. JetBlue Airways Corp.*, 636 Fed. Appx. 16, 19 (2d Cir. 2015) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009)).

Here, Plaintiff argues that Defendant had knowledge of Plaintiff's disability, she requested the initial ergonomic study, and that after she moved to Clark Hall, she requested her ergonomic workstation, which Defendant knew was related to her disability. It is undisputed that Plaintiff has a disability, and that Defendant had knowledge of that disability in 2015. *See* Dkt. No. 91-24.[5] The parties dispute whether the original ergonomic work set up was done pursuant to Plaintiff's request. Defendant notes that the industrial hygienist who performed the study, referred to it as a "routine review." *See* Dkt. No. 93-4 at 2. Defendant also notes that there is no evidence

---

[5] The parties, however, have not indicated to the Court what Plaintiff's disability is. *See* Dkt. No. 91-1 at 9 n.2.

that Plaintiff requested the study and Plaintiff did not submit a formal reasonable accommodation request regarding it.  In the OSHA factfinding investigation, however, Plaintiff's supervisor stated that the reason for the evaluation was because "[Plaintiff] did not like the office set up in general." Dkt. No. 93-22 at 12.

After Plaintiff moved to Clark Hall, Plaintiff requested her ergonomic setup.  On March 15, 2018, Plaintiff emailed her supervisor stating, "I need an adjustment and change at work for a reason related to a medical condition I have said this several times to no avail to you. … The office I currently am working out of is not setup for me to use without injury per the ergonomic study that was completed back in 2015 for Workplace layout is inadequate for employee." Dkt. No. 94-12.  An "Accommodation Request Determination," dated April 10, 2018, stated that the VA would provide "the same ergonomic study previously provided and necessary additional modifications or accommodations to that space that do not pose an undue hardship.  It our [sic] desire to provide any additional reasonable accommodation that may be needed to address any of your limitations." Dkt. No. 94-13 at 6.  And an EEO Counselor for the VA, Cecil L. Dawson, emailed a person within the VA to setup Plaintiff's ergonomic workstation.  Ms. Dawson stated the ergonomic equipment was provided to Plaintiff, following the ergonomic study, to support her reasonable accommodation from an ergonomic study.  Dkt. No. 91-20 at 2.

Accordingly, the Court finds that Plaintiff clearly requested her ergonomic setup and that Defendant understood it was related to her disability.  But despite these requests, and responses by Defendant, it is unclear where the "interactive process" broke down.  Defendant communicated with Plaintiff and sought, at least originally, to transfer Plaintiff's ergonomic setup to Clark Hall. *See* Dkt. No. 94-13 at 6; Dkt. No. 91-20 at 2.  Plaintiff, however, never submitted a formal request

for accommodation, as she had done previously for enlarged computer monitors, which she had received and which were transferred to Clark Hall.

"When the interactive process breaks down, a court should look for signs of good faith or bad faith, in assessing liability. A party that obstructs the process is not acting in good faith. Further, a party that fails to communicate, or withholds important information solely within the knowledge of that party, can be found to have obstructed the process in bad faith." *Thompson v. City of New York*, No. 98 CIV. 4725, 2002 WL 31760219, *8 (S.D.N.Y. Dec. 9, 2002) (citations omitted). An "employee who is responsible for the breakdown of [the] interactive process may not recover for a failure to accommodate." *Nugent v. St. Lukes–Roosevelt Hosp. Ctr.* 303 Fed. Appx. 943, 946 (2d Cir. 2008); *see also Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 371 (S.D.N.Y. 2018) ("if [an] employee [her or himself] causes the interactive process to collapse, an employer will not be liable for failing to make an accommodation under the ADA"). On the other hand, an employer may not obstruct the interactive process by refusing to investigate a request and determine its feasibility. *See Graves*, 457 F.3d at 185 (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000)).

The record before the Court does not reveal where the interactive process broke down. If Defendant worked with Plaintiff and instructed her to submit the proper paperwork before the transfer of the ergonomic setup, and Plaintiff failed to do so, then it would likely not be liable. Conversely, if Defendant simply denied Plaintiff's request or frustrated her ability to receive a reasonable accommodation, then it might be liable. But the record does not reveal why Plaintiff did not receive the reasonable accommodation. "Courts must deny motions to dismiss or motions for summary judgment when presented with conflicting facts about the provenance of a breakdown...." *Goonan v. Fed. Rsrv. Bank of New York*, 916 F. Supp. 2d 470, 480 (S.D.N.Y.

11

2013). The parties' cross motions for summary judgment are therefore denied because the record "raises genuine issues of fact as to which party caused the interactive process to fail." *Hensel v. City of Utica*, No. 6:15CV0374, 2020 WL 1451579, *11 (N.D.N.Y. Mar. 25, 2020); *Malzberg v. New York Univ.*, No. 19-CV-10048, 2022 WL 889240, *16 (S.D.N.Y. Mar. 25, 2022) (denying a motion for summary judgment because, "assuming the interactive process was triggered, the record is replete with disputed facts regarding whether Defendant or Plaintiff obstructed the process").

**C.     Hostile Work Environment**

"To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, ... the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex [or race],'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)), or because of any other characteristic protected by Title VII, *see Gregory*, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element). "In determining whether conduct constitutes a hostile work environment, the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pliant*, 965 F. Supp. 2d 302, 305 (W.D.N.Y. 2013) (citations omitted). "[A] few isolated incidents of 'boorish or offensive use of language' are generally insufficient to establish a hostile work environment." *Id.* (citations omitted). The court must review the totality of the circumstances, and may consider incidents that are facially neutral,

"so long as a reasonable fact-finder could conclude that they were, in fact, based on sex [or race]." *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) (collecting cases). However, the court must exclude from its consideration "personnel decisions that lack a linkage or correlation to the claimed ground of discrimination" because "[e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude." *Id.*; *see also Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (holding that objectionable but facially sex-neutral behavior by one person could not be considered in a hostile work environment claim where there was no evidence of that person's bias).

To establish that a work environment is objectively hostile, "a plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 119 (2d Cir. 2010) (emphasis in original). In order to be considered pervasive, a plaintiff must show "that the incidents were 'sufficiently continuous and concerted.'" *Brennan v. Metro. Opera Assoc.*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Robinson v. Purcell Const. Corp.*, 859 F. Supp. 2d 245, 255 (N.D.N.Y. 2012) (finding five "crude and offensive" gender-based comments were "neither pervasive nor severe"). As for severity, the "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not objectively severe enough to establish a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).

Additionally, it is "axiomatic that Plaintiff must establish that the hostile conduct occurred on account of [her protected characteristic] to make out a disability-based hostile work environment claim." *Johnson v. City of New York*, No. 10 CIV. 6294, 2012 WL 1076008, *6

(S.D.N.Y. Mar. 28, 2012) (citing *Thompson v. N.Y.C. Dep't of Prob.*, 348 Fed. Appx. 643, 646 (2d Cir. 2009)). Courts regularly grant summary judgment when there is no "causal connection" between the alleged hostile acts and the protected characteristic. *Marecheau v. Equal Emp. Pracs. Comm'n*, No. 13-CV-2440, 2014 WL 5026142, *8 (S.D.N.Y. Sept. 30, 2014); *see also Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination"); *Tassy v. Buttigieg*, 540 F. Supp. 3d 228, 237 (E.D.N.Y. 2021) ("Here, the record does not support a reasonable inference that the mistreatment occurred because of a protected characteristic"). Indeed, "federal anti-discrimination statutes are not intended to create a generalized civility code for the workplace." *Amie v. Shinseki*, 806 F. Supp. 2d 641, 646 (W.D.N.Y. 2011). Rather, the hostile act must have a nexus to the protected characteristic. *See, e.g., De Figueroa v. New York*, 403 F. Supp. 3d 133, 161 (E.D.N.Y. 2019) ("[T]here are no indications, such as contemporaneous disparaging remarks, that these actions were taken because of Plaintiff's disability") (citing *Raniola v. Bratton*, 243 F.3d 610, 621–22 (2d Cir. 2001) ("To demonstrate that all of the alleged abuse was on account of [a protected characteristic], [a plaintiff] may either show that the ... verbal abuse indicated that other adverse treatment was also suffered on account of [the protected characteristic], or resort to circumstantial proof that the other adverse treatment that was not explicitly [based on the protected characteristic] was, nevertheless, suffered on account of [it]")).

Here, Plaintiff fails to establish that any allegedly hostile conduct was severe or pervasive. Moreover, there is no evidence in the record that the few events Plaintiff alleges were on account of her gender. Plaintiff alleges that she regularly witnessed "jokes, swearing, [and] crosstalk

14

across the hallway." Dkt. No. 94-1 at ¶ 33. She further alleges that "one source of jokes" regarded army personnel having sex with sheep. *Id.* at ¶ 36. The only other reference to offensive language that Plaintiff points to is that MSCs "chanted Army cadences in the workplace, some of which could have had offensive language." *Id.* at ¶ 39. Plaintiff also alleges that she was told in 2013 that she would make a great wife someday, and that she was occasionally referred to by the nickname "Doc McStuffins."[6] *Id.* at ¶¶ 41, 44.

No reasonable juror could conclude that those allegations rise to the level of severity or pervasiveness necessary to prevail on a hostile work environment claim. *See, e.g., Vito v. Bausch & Lomb Inc.*, 403 Fed. Appx. 593 (2d Cir. 2010) (holding that no hostile work environment existed because the alleged actions of her co-workers were just sporadic use of abusive language, gender-related jokes, occasional teasing, or workplace bullying completely detached from any discriminatory motive); *Robinson v. Dibble*, 613 Fed. Appx. 9, 13 (2d Cir. 2015) (affirming summary judgment for defendants where "evidence of crude and offensive comments directed at [plaintiff's] gender or mental health issues that were delivered sporadically by coworkers . . ., while condemnable, did not rise to the level of creating an abusive and hostile workplace environment"). Courts have regularly held that such few and sporadic events, over such a large period of time, is insufficient to demonstrate the "high bar" required to state a claim for a hostile work environment. *Duplan v. City of New York*, 888 F.3d 612, 627 (2d Cir. 2018); *see also Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58-59 (2d Cir. 2004) (affirming summary judgment in favor of the employer because two instances of overt sexual solicitation over two months and a subsequent disciplinary write up were "not sufficiently severe or pervasive to create

---

[6] Doc McStuffins is a character in an animated children's television show about a female doctor that fixes toys.

a hostile work environment"); *Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 196 (E.D.N.Y. 2016) (finding allegations that the plaintiff's supervisor laughed at him, someone falsified his information, and that he suffered ridicule, humiliation, demotion, and suspension to be insufficiently severe or pervasive).

Regardless, the record lacks any evidence that any behavior occurred because of Plaintiff's gender. *See, e.g.*, *Carroll v. New York*, No. 114CV00479, 2018 WL 1033285, *6 (N.D.N.Y. Feb. 22, 2018) ("What is lacking in all of these allegations is any evidence demonstrating that the alleged hostile work environment was caused because of her sex"). Instead, all the record shows is that jokes that were offensive in a general nature were occasionally made in the workplace. "This is the kind of 'boorish or offensive use of language' that are 'generally insufficient to establish a hostile work environment.'" *Dotson v. City of Syracuse*, No. 5:18CV750, 2019 WL 2009076, *8 (N.D.N.Y. May 7, 2019) (quoting *Salmon*, 965 F. Supp. 2d at 305). Plaintiff has failed to show any connection between the occasional offensive jokes and her gender.

Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff cannot establish that she was subjected to severe or pervasive conduct because of her gender. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim.

## IV. CONCLUSION

After careful review of the record, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Plaintiff's motion for partial summary judgment (Dkt. No. 91) is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for partial summary judgment (Dkt. No. 93) is **GRANTED in part** and **DENIED in part**;[7] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 14, 2022
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[7] Defendant's motion for summary judgment on the hostile work environment claim is granted.